**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **Saba Ilac Sanayii Ve Ticaret AS**,<br>Halkali Merkez Mh., Basin Ekspres Cd., 5/1B. 34303<br>Kucukcekmece/Istanbul, Turkey,<br><br>Plaintiff<br><br>*v.*<br><br>**United States Food & Drug Administration**,<br>10903 New Hampshire Avenue, Silver Spring, MD 20993,<br><br>Defendant. | Case No. 26-cv-3513 |
| **Complaint** | |

Saba Ilac Sanayii Ve Ticaret AS ("Saba") brings this action against Defendant United States Food & Drug Administration ("FDA") as follows:

## Nature of the Action

1. This is a civil action under the Administrative Procedure Act to vacate (1) FDA's unlawful refusal to receive Saba's Abbreviated New Drug Application No. 221659 ("Saba's ANDA") seeking approval for Saba to market a generic equivalent of [redacted]

[redacted] (Exhibit A), and (2) FDA's [redacted] decision granting [redacted] Citizen Petition to update the FDA's statutorily mandated *Approved Drug Products with Therapeutic Equivalence Evaluations* (the "Orange Book") [redacted]

## THE PARTIES

2. Plaintiff Saba is a company organized under the laws of the country of Turkey, having a principal place of business at Halkali Merkez Mh., Basin Ekspres Cd., 5/1B. 34303 Kucukcekmece/Istanbul, Turkey. Saba is a drug manufacturer engaged in the business of, among other things, marketing generic pharmaceutical products in the United States under FDA-approved abbreviated new drug applications.

3. Defendant FDA is a United States governmental agency under the Department of Health and Human Services that is responsible for accepting or refusing to accept, reviewing, and approving or denying abbreviated new drug applications filed under 21 U.S.C. § 355(j) to market drugs. According to the FDA's website, the FDA's headquarters is located at 10903 New Hampshire Avenue, Silver Spring, MD 20993.

## JURISDICTION AND VENUE

4. The Court has subject matter jurisdiction to adjudicate this action under at least 28 U.S.C. § 1331 because the claims arise under the Administrative Procedure Act and the Federal Food, Drug, & Cosmetic Act.

5. Venue is proper in this district under 28 U.S.C. § 1391(e)(1) because the

defendant is an agency of the United States.

## ALLEGATIONS

**I.** [redacted]

6. [redacted]

7. [redacted]

8. [redacted] a drug manufacturer who obtained approval of a drug that is a new chemical entity ("NCE")—*i.e.*, an active moiety that had not

been previously approved—was entitled to receive five years of NCE exclusivity, during which the FDA could not receive an application for a generic version of the same drug. *See* 21 U.S.C. § 355(j)(5)(F)(ii). [redacted]

9. This case is about the FDA's unlawful decision to award [redacted] The FDA's decision [redacted] was based not on statutory or regulatory requirements, but rather on the FDA's application of the umbrella policy—a rule that the FDA invokes to extend NCE exclusivity from one drug application to another based on a commonality of active moiety. *See* 21 C.F.R. § 314.108(b)(2); *New Chemical Entity Exclusivity Determinations for Certain Fixed-Combination Drug Products*, CDER Final Guidance (Oct. 2014). [redacted]

## II. [redacted]

10. On [redacted] the FDA approved two new drug applications ("NDAs") [redacted] [redacted] sought approval to market [redacted], a combination of [redacted] with [redacted]. [redacted] sought approval to market the [redacted], which contains two active ingredients, [redacted] and

[redacted] Both the [redacted] are indicated to treat [redacted] in adults.

11. Because the [redacted] were the first approvals for [redacted], the FDA recognized 5-year NCE exclusivity for each. In addition, because the FDA determined [redacted], and because [redacted]

12. Accordingly, shortly after approval and now, the Orange Book information published by the FDA reflected and reflects that [redacted]

13. Thereafter, [redacted] the FDA approved [redacted], [redacted]. [redacted] is approved to treat [redacted]. [redacted] is not FDA-approved to treat [redacted]

[redacted].

14. When the FDA approved [redacted] had not submitted a request to the FDA for [redacted]. Pursuant to its umbrella policy, at the time of [redacted] approval, the FDA applied the NCE exclusivity from [redacted] and [redacted] because [redacted]

15. Shortly after approval, the Orange Book information published by the FDA reflected that [redacted] enjoyed NCE exclusivity [redacted] Accordingly, per the Orange Book, the FDA was prohibited from receiving an [redacted]

**III. [redacted]**

16. Thereafter, on [redacted] filed a citizen petition with the FDA requesting that the FDA correct the Orange Book [redacted]. The FDA assigned [redacted] citizen petition to [redacted]

17. On [redacted] the FDA granted [redacted] citizen petition. Exhibit B.

18. Subsequently, the FDA revised the Orange Book information listed for [redacted]

[redacted]

19. As a result of the FDA's recognition of [redacted]

**IV.** [redacted]

20. On [redacted] Saba submitted Saba's ANDA seeking approval to market a generic version of [redacted] Saba's ANDA included a Paragraph IV certification that each of the patents then listed in the Orange Book for [redacted] is invalid and/or would not be infringed by the sale, manufacture, or use of products marketed under Saba's ANDA ("Saba's ANDA Product").

21. [redacted] because Saba's ANDA contains a Paragraph IV certification, Saba would be legally entitled to submit Saba's ANDA to the FDA for review at least as early as [redacted]

22. Alternatively, according to the FDA's interpretation of relevant statutes in

*Providing Regulatory Submissions in Electronic Format – Receipt Dates*, CDER & CBER Final Guidance (Feb. 2014), at 3, both the first date on which an ANDA identifying [redacted] as a reference listed drug and containing a Paragraph IV certification could be deemed submitted and the date on which Saba submitted Saba's ANDA were [redacted] because [redacted] was a Sunday.

23. In at least Section 1.12.11.2 of Saba's ANDA (inclusive of its subsections), Saba asked the FDA to receive Saba's ANDA as of the date of its submission because [redacted] was not entitled to [redacted] Saba's ANDA included argument and evidence that Saba contended supported its view that [redacted] was not entitled to [redacted].

24. On September 15, 2026, the FDA refused to receive Saba's ANDA because, in the FDA's view, [redacted] barred Saba's submission. Exhibit A; *see* 21 C.F.R. § 314.101(e).

25. The FDA also refused to consider Saba's position that [redacted] was not entitled to [redacted], claiming that Saba's ANDA was "not an appropriate venue for challenging the Agency's determination that [redacted] is eligible for [redacted]." According to the FDA's refusal to receive Saba's ANDA, "[b]ecause other parties may have an interest in an Agency decision on [Saba's] arguments, it is appropriate to consider the issues raised in [Saba's] letter in a public manner."

26. Per 21 C.F.R. § 314.101(b)(3), Saba has only three choices when the FDA issues a decision refusing to receive an ANDA: it could (1) withdraw the ANDA, (2)

correct and resubmit the ANDA, or (3) take no action, in which case the ANDA will be deemed withdrawn after a year. The FDA provides no procedure for contingent review of an ANDA after the FDA issues a refusal-to-receive decision.

27. Saba has not withdrawn Saba's ANDA. Nor does Saba wish to do so.

## V. The Immediate Harm from the FDA's Refusal to Receive Saba's ANDA

28. The FDA's refusal to receive Saba's ANDA and afford it a [redacted] submission date has several immediate and harmful consequences.

29. First, despite there being no lawful bar, Saba cannot obtain review of Saba's ANDA. Under the FDA's erroneous interpretation of the law, Saba must wait [redacted] before resubmitting its ANDA for review.

30. Second, Saba is unable to trigger patent litigation [redacted] that it would otherwise be entitled to start if the FDA properly received Saba's ANDA. Once Saba's ANDA is received and the FDA acknowledges Saba's submission of a Paragraph IV certification, Saba must notify [redacted] within 20 days that it has submitted an ANDA with a Paragraph IV certification to patents listed in the Orange Book [redacted] *Teva Pharms. USA, Inc. v. Azar*, 369 F. Supp. 3d 183, 187 (D.D.C. 2019) (quoting 21 U.S.C. § 355(j)(2)(B)(ii)(I) and citing 21 C.F.R. § 314.101(b)(2)). If [redacted] does not commence an infringement action against Saba within 45 days, the FDA may approve Saba's ANDA if it meets the substantive requirements for approval. *See* 21 C.F.R. § 314.107(b)(1)(i)(C). If [redacted] sues Saba for patent infringement, the FDA

may not approve Saba's ANDA until the expiration of a 30-month stay. *See* 21 C.F.R. § 314.107(b)(3)(i)(A). The FDA's improper failure to acknowledge Saba's ANDA filing and trigger the patent litigation process delays Saba's potential market entry, which harms both Saba and potential consumers of a cheaper, generic alternative to [redacted]

31. Third, the FDA's improper refusal to receive Saba's ANDA threatens to deprive Saba of commercially valuable regulatory rights to market a generic version of [redacted] for 180 days without other generic competition.

32. On information and belief, Saba is a "first applicant" for [redacted] because it submitted its ANDA on the first day on which a substantially complete application for [redacted] was submitted. As a first applicant, and subject to other conditions, if Saba's ANDA is finally approved, Saba would have the right to market its generic equivalent [redacted] for 180 days exclusive of all other generic manufacturers (except others who also submitted ANDAs the same day as Saba, if there are any). By refusing to receive Saba's ANDA, the FDA is improperly depriving Saba of potential "first applicant" status, including the potential for significant market advantages resulting from 180-day exclusivity. *See, e.g.*, *First Generic Launch has Significant First-Mover Advantage Over Later Generic Drug Entrants* (Nov. 26, 2025) (https://www.drugpatentwatch.com/blog/first-generic-launch-has-significant-first-mover-advantage-over-later-generic-drug-entrants/) (last visited Apr. 24, 2026) (describing economic benefits).

33. Moreover, absent further action, pursuant to the FDA's regulations, the FDA

will deem Saba's ANDA withdrawn on September 15, 2027, one year from the date of its refusal-to-receive decision, even though Saba seeks review of its ANDA based on its original, legally compliant submission.

34. For at least these reasons, the FDA's unwarranted refusal to receive Saba's ANDA has caused and threatens to continue to cause Saba substantial and irreparable harm.

## Cause of Action No. 1
## (Agency Action Violating 5 U.S.C. § 706(2) – The FDA's Refusal to Receive Saba's ANDA)

35. Saba incorporates the foregoing allegations by reference.

36. On September 15, 2026, the FDA refused to receive Saba's ANDA on the grounds that Saba was not legally entitled to submit its ANDA until [redacted]

37. The FDA identified no purported defect in Saba's ANDA that would constitute a statutory or regulatory basis for a refusal to receive Saba's ANDA other than the purported bar imposed by [redacted]

38. The FDA's refusal to receive Saba's ANDA [redacted] was final agency action.

39. [redacted] is not entitled to [redacted] at least because (1) [redacted] did not [redacted] (2) [redacted] does not [redacted] and is not independently statutorily eligible [redacted]; and (3) statutory law

precludes the application of the FDA's umbrella policy (to the extent such policy is otherwise consistent with statute) [redacted]

40. The FDA's refusal to receive Saba's ANDA [redacted] was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law at least because it is premised on the incorrect legal conclusion that [redacted]

41. In addition, the FDA's refusal to receive Saba's ANDA stated that the FDA did not consider Saba's evidence and argument that [redacted] because, according to the FDA, Saba's ANDA was "not an appropriate venue" to raise the issue and that any challenge should be presented publicly through a citizen petition "[b]ecause other parties may have an interest in an Agency decision."

42. 21 C.F.R. § 10.25(a)(1)–(2) permit "an interested person" like Saba "to petition the Commissioner to … take any …form of administrative action" … (1) "[i]n the form specified in other applicable FDA regulations…" or (2) "in the form for a citizen petition in § 10.30."

43. The FDA's express failure to consider Saba's request to revoke [redacted] in Saba's ANDA—an application "[i]n the form specified in other applicable FDA regulations" under 21 C.F.R. § 10.25(a)(1)—was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

44. The FDA has not stayed or otherwise rendered inoperative its decision

refusing to receive Saba's ANDA as of [redacted].

45. Saba is adversely affected by the FDA's September 15, 2026 decision refusing to receive Saba's ANDA.

46. Saba has suffered and continues to suffer substantial harm as a result of the FDA's refusal to receive Saba's ANDA.

## CAUSE OF ACTION NO. 2
## (AGENCY ACTION VI[redacted] DECISION GRANTING [redacted])

47. Saba incorporates the foregoing allegations by reference.

48. On [redacted] filed a citizen petition requesting that the FDA correct the Orange Book [redacted]

49. On [redacted] the FDA granted [redacted] citizen petition.

50. [redacted] is not entitled to [redacted] at least because (1) [redacted] (2) [redacted] does not [redacted] and is not independently statutorily eligible [redacted]; and (3) statutory law precludes the application of the FDA's umbrella policy (to the extent such policy is otherwise consistent with statute) [redacted]

51. On or shortly after [redacted], the FDA revised the Orange Book to apply [redacted]

52. The FDA's [redacted] decision granting [redacted] citizen petition was final agency action.

53. The FDA's [redacted] decision granting [redacted]

citizen petition was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law at least because it is premised on the incorrect legal conclusion that [redacted].

54. The FDA's refusal to receive Saba's ANDA stated that the FDA did not consider Saba's evidence and argument that [redacted] because, according to the FDA, Saba's ANDA was "not an appropriate venue" to raise the issue and that any challenge should be presented publicly through a citizen petition "[b]ecause other parties may have an interest in an Agency decision."

55. 21 C.F.R. § 10.25(a)(1)–(2) permit "an interested person" like Saba "to petition the Commissioner to … take any …form of administrative action" … (1) "[i]n the form specified in other applicable FDA regulations…" or (2) "in the form for a citizen petition in § 10.30."

56. The FDA's express failure to consider Saba's request to revoke [redacted] in Saba's ANDA—an application "[i]n the form specified in other applicable FDA regulations" under 21 C.F.R. § 10.25(a)(1)—was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law.

57. 21 C.F.R. §§ 10.45(d)(1)(ii), (e) permit an "interested person" to seek judicial review without seeking reconsideration of the Commissioner's final decision. Saba is an interested person—*i.e.*, someone who "otherwise asks to participate in … court action." 21 C.F.R. § 10.3(a).

58. Saba is adversely affected by the FDA's [redacted] decision granting

[redacted] citizen petition, at least because the FDA relied on its decision as a basis to refuse to receive Saba's ANDA.

59. Saba has suffered and continues to suffer substantial harm as a result of the FDA's decision to grant [redacted]

## Prayer for Relief

Wherefore, Saba seeks judgment in its favor and against the FDA, and respectfully requests the following relief:

- A declaration that the FDA's refusal to receive Saba's ANDA, including the FDA's decision not to consider Saba's position that the FDA unlawfully granted [redacted] citizen petition [redacted] was unlawful;
- A declaration that the FDA's decision granting [redacted] citizen petition [redacted] was unlawful;
- An order vacating the FDA's refusal to receive Saba's ANDA;
- An order vacating the FDA's decision granting [redacted] citizen petition [redacted]
- An order compelling the FDA (and/or an appropriate officer, such as the Secretary of Health & Human Services, the Commissioner of Food & Drugs, or a designee thereof) to:
    - deem Saba's ANDA as filed on [redacted] for the purposes of determining whether, if other statutory and regulatory conditions are satisfied, Saba is a "first applicant"

entitled to 180-day exclusivity under 21 U.S.C. § 355(j)(5)(B)(iv) and related statutes and regulations;

- deem Saba's ANDA as filed on the date of final judgment (*i.e.*, the date on which judgment in Saba's favor is final and unappealable) for all other purposes, including (1) any deadlines imposed on FDA or Saba regarding the FDA's ANDA review process; (2) calculation of any deadline for forfeiture of 180-day exclusivity; and (3) the deadline for an applicant submitting an ANDA with a Paragraph IV certification to provide written notice to appropriate parties under, among other authorities, 21 U.S.C. § 355(j)(2)(B);
- within 5 business days of the date of final judgment, issue a letter to Saba acknowledging receipt of Saba's ANDA, including the Paragraph IV certifications contained therein, as per 21 C.F.R. § 314.101(b)(2);

- An order compelling the FDA (and/or an appropriate officer, such as the Secretary of Health & Human Services, the Commissioner of Food & Drugs, or a designee thereof) to revise the information published in the Orange Book for [redacted]; and
- Such other injunctive, monetary, and declaratory relief that the Court deems appropriate.

DATED: OCTOBER 8, 2026

Respectfully submitted,

*/s/ Christopher M. Bruno*

Christopher M. Bruno (D.C. Bar No. 997258)
Shashank Upadhye (*pro hac vice* application forthcoming)
UPADHYE TANG LLP
109 Symonds Drive, #174
Hinsdale, IL 60522-0174
Phone: (312) 598-2610
chris@ipfdalaw.com
shashank@ipfdalaw.com

*Attorneys for Plaintiff Saba Ilac Sanayii Ve Ticaret AS*